UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| v. | : Case No.: 22-CR-66 (CJN) |
| | : |
| MATTHEW JASON BEDDINGFIELD, | : |
| | : |
| Defendant. | : |

**GOVERNMENT'S MOTION FOR EMERGENCY STAY AND
REVOCATION OF THE MAGISTRATE JUDGE'S RELEASE ORDER**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully moves this Court to—pursuant to the provisions of 18 U.S.C. § 3145(a)(1)—revoke the Magistrate Judge's order of release (MINUTE ORDER, 8 Mar. 2022), and grant the government's Motion for an Order of Detention Pending Trial (ECF No. 10). Other Circuits have established that such motions require the District Court to review the government's motion de novo, but the D.C. Circuit Court of Appeals has "not squarely decided the issue" of standard of review and generally provides for District Courts to view such prior determinations with "broad discretion." *United States v. Munchel*, 991 F.3d 1273, 1280 (2021). The government requests that the following points and authorities, as well as any other facts, arguments, and authorities presented at the detention hearing, be considered in the Court's determination regarding pre-trial detention. The government further requests that this Court continue the stay of the Magistrate Judge's order of release until a determination of this motion is made. The government requests that pursuant to statute, any hearing to be held be set or determination on the motion be made promptly. 18 U.S.C. § 3145(a).

## I. PROCEDURAL BACKGROUND

The government relies on and incorporates the procedural background contained in its Motion for an Order of Detention Pending Trial. ECF No. 10, pp. 2-3. Since the filing of that motion, a Grand Jury has returned a nine-count Indictment against the defendant, having found probable cause to believe that Beddingfield committed nine offenses. ECF No. 12.

During two court sessions, the government argued for pretrial detention and the defendant argued for conditions of release, the latter of which the Magistrate Judge granted. MINUTE ENTRY, 4 Mar. 2022; MINUTE ENTRY, 8 Mar. 2022; MINUTE ORDER, 8 Mar 2022; PROPOSED CONDITIONS OF RELEASE, 8 Mar. 2022. While the government appreciates the Magistrate Judges careful and thorough consideration of its arguments, it believes that the Magistrate Judge conclusion that conditions of release could be crafted is inaccurate, and moves this Court to decide, upon a full consideration of the record, that the government has proved by clear and convincing evidence that no condition or combination of conditions may reasonably assure the safety of any other person and of the community. 18 U.S.C. § 3142(f)(1)(A).

## II. FACTUAL BACKGROUND

Beddingfield was on conditions of release facing charges of attempted murder when he traveled to Washington, D.C., and made his way to the United States Capitol on January 6, 2021. Assuming *arguendo* that he was within his rights to be in Washington, D.C., he was not within his rights to be an active and violent participant in the Capitol siege. He was one of the first to breach the restricted perimeter and make his way to the West Plaza using the Maryland walkway. He was one of the first to jump over the barrier and rush the line of overwhelmed U.S. Capitol Police. He fought with law enforcement to keep one of bike racks. These bike rack style barricades were there to protect law enforcement, the Capitol, and the individuals and democratic processes going on

inside, but rioters, once they took control of them were breaking them down to use as weapons or using them as ladders to assist in their siege of the Capitol.

Beddingfield was one of the first to use a dangerous instrument to attack U.S. Capitol Police officers by stabbing and jabbing with the flagpole, and then by throwing a metal rod. After assaulting law enforcement, Beddingfield took a beat, filmed himself waving his flag—now broken on the bodies of law enforcement—while standing on a wall of the Capitol, and continued onward and upward. Beddingfield then entered the Capitol.

While inside, Beddingfield once again joined a mob in attempting to overwhelm law enforcement, now assisted by the Metropolitan Police Department, who were the last line of defense between the hoard of rioters that now filled the Rotunda, and the Senate Chamber and all offices and areas thereabout. Beddingfield can be seen pushing to the front of that line with his flag raised horizontally above the heads of the other rioters, ready to once again attack law enforcement. Fortunately in this instance, the line held and Beddingfield and others were dispelled. Instead of leaving, Beddingfield continued walking about the Capitol, dipping into and out of various rooms and hallways, before finally exiting out the Capitol's North Door.

Since January 6, 2021, Beddingfield has continued to engage in violent rhetoric and criminal acts that show that he cannot be trusted to follow conditions of any court and that he presents a persistent and continued danger to the community. For all other facts and proffers, the government relies on, adopts, and incorporates into this motion the facts as presented in its prior filings and on the record during the two sessions of the detention hearing.

### III.   ANALYSIS

All the facts and circumstances, history and characteristics, and legal authorities and caselaw surrounding Matthew Jason Beddingfield and the allegations against him establish by

clear and convincing evidence that this Court should grant the government's request for an Order of Detention Pending Trial.

### A. Nature and Circumstances of the Offense Charged and Weight of the Evidence

The government relies on the representations and proffers previously made and the record as established through the filings and hearings. Accordingly, the government has proven by clear and convincing evidence that the first two factors weigh in favor of ordering Beddingfield detained pending trial.

### B. History and Characteristics of the Defendant

Here, Beddingfield *does* have a criminal history and he *does* have a propensity for violence. As proffered by the government, at a bare minimum this Court may consider the defendant was convicted of a felony offense for shooting a seventeen-year-old male in the head (he survived) while in a Walmart parking lot; that police found ten spent 9mm shells and two vehicles with bullet-flattened tires in the parking lot; that police pursuant to a search warrant recovered dozens of rounds of loose 9mm ammunition, 9mm ammunition loaded into magazines, marijuana, and a knife in Beddingfield's car; and that Beddingfield's father gave an interview immediately after in which he clearly stated that his son shot the victim and gave a motive for the shooting (that his son, the defendant, had been robbed). This Court may also consider that Beddingfield pleaded guilty, pursuant to *North Carolina v. Alford*, to a felony crime of violence, specifically assault with a deadly weapon causing serious injury.

That kind of a criminal history with those facts and findings pulls Beddingfield firmly away from an *Owens/Perkins* comparison as to the third factor and requires a closer examination of Judge Kollar-Kotelly's reasoning in *Richardson* than the Magistrate Judge performed. Even so, the first incidence where Richardson is alleged to have encountered law enforcement was a 2018 encounter with law enforcement where Richardson is alleged to have brandished a firearm, but

charges were never brought. His second encounter was for driving without a license and the illegal carry of a firearm, a case that is still pending and was pending when defendant participated in the Capitol siege on January 6, 2021. Beddingfield in all ways presents an easier calculus than Richardson because Beddingfield did not simply brandish a firearm in a confrontation where charges were never brought, he sprayed bullets into a Walmart parking lot, endangering the community and damaging property, striking a minor in the head and dislodging a piece of the victim's skull, all in an apparent retaliation for a robbery.

But Beddingfield's calculus goes even further, for the third factor under 18 U.S.C. § 3142(g)(3)(B) directs the judicial officer to consider "whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law." Beddingfield was, in fact, on pretrial release for a locally charged violent felony offense when he decided to use an American flag to attack and assault police officers on January 6, 2021. Further, prior to January 6, Beddingfield had already indicated that he would not abide by conditions of release set by the court and would take full advantage of what appears to have been lax supervision by immediately reestablishing a social media presence, selling "Carts," and trolling other users of social media. Thus, the third factor not only weighs in favor of pretrial detention for Beddingfield, but it is a weighty and hefty third factor that the government now places squarely on the scale, right next to factors one and two.

C. **Nature and Seriousness of the Danger**

The defendant's continued dangerousness to the community is illustrated by the fact that even though he was serving a term of probation, even though he was allowed to remain free and given a chance at non-incarceration, Beddingfield was arrested for driving 110 MPH down a public roadway, once again proving himself to be a danger to the community.

Much is made of the *Munchel* decision's treatment of the fourth factor, and rightly so. It imposes, as all judges post-*Munchel* have recognized, a recognizable burden on the government to prove the element of prospective danger. The government agrees with Judge Kollar-Kotelly's reasoning as outlined above, but also points the Court to his subsequent arrest. Further, despite the fact that defendant was a convicted felon at the time of his arrest, law enforcement recovered a total of eight firearms and over 2,000 rounds of ammunition in the Beddingfield home.

As shown by the defendant's own social media trolling, defendant was engaging in consistent and escalating rhetoric that was both vile and violent. In addition to the previously submitted conversations, the government asks this Court to consider the following recent social media conversations in which Beddingfield confronts individuals online, threatening and/or wishing physical harm on them:

**January 16, 2022**

| | |
|---|---|
| **BEDDINGFIELD:** | [unprovoked trolling] Can I hang you first? You disgusting race traitor whore I hope you get raped |

**January 16, 2022**

| | |
|---|---|
| | [unprovoked trolling by Beddingfield omitted] |
| **IG USER:** | Are you enjoying your Saturday night hiding behind a keyboard? I'm sure your family is extremely proud |
| **BEDDINGFIELD:** | Yes and I'm sure your family is disgusted by your decision to fuck a monkey. If they aren't they should be put down as well |

**February 4, 2022**

| | |
|---|---|
| **BEDDINGFIELD:** | [unprovoked] Beg me for mercy when my knee is on your neck George |
| **IG USER:** | plz do it i promise im with the smoke |
| **BEDDINGFIELD**: | We are not our ances- <br> Down goes the n***** |
| **IG USER:** | ong we not our ancestors 😂 tf u thought |

| | |
|---|---|
| BEDDINGFIELD: | Y'all have been enslaved by every other race at some point in history now y'all at the point y'all enslave each other in Africa 😂 what a pathetic race |
| IG USER: | Ight bro so we boxing or what ? |
| BEDDINGFIELD: | Sure, as long as it's 1 on 1. Expect to end up like one of the above pictures |

**February 5, 2022**

| | |
|---|---|
| BEDDINGFIELD: | You women are dumb asf thinking you couldn't get knocked out in 1 punch |
| IG USER: | send addy |
| BEDDINGFIELD: | "Gang stay deep" lol you probably got raped into a gang wouldn't surprise me at all. Now you're a slave in your mind |
| IG USER: | u j tryna run yo fucking mouth |
| | u not bout shit |
| BEDDINGFIELD: | Speak English you're white not a n***** |
| | [Street address redacted]<br>Zebulon, NC  [ZIP redacted]<br>United States |
| | I'll be waiting |
| | You otw? |
| | That's what I thought n***** lover |

In the *Owens* decision, and referencing other January 6 cases, Chief Judge Howell specifically stated, "Intentional and purposeful assaultive conduct, particularly involving multiple incidents of directly provocative and aggressive, threatening actions toward police, particularly combined with verbal threats before, during or continuing after that date, are all indicia of dangerousness that may warrant pretrial detention." *Owens*, 541 F. Supp. 3d at 118. Here, Beddingfield engaged in intentional and purposeful assaultive conduct when he was one of the first of what would be thousands of rioters to enter the restricted grounds of the Capitol, when he jumped over the barricades and run directly up to law enforcement, when he wrestled with law enforcement over a bike rack, when he stabbed and jabbed law enforcement with his flagpole, so forcefully and repeatedly that, like Richardson, the flagpole broke, when he took a swipe directly

at the face of law enforcement officer who was looking away from Beddingfield, when he threw what appears to be the broken portion of his flagpole at law enforcement, and when he fought his way to the front of another mob inside the Capitol and held his flagpole once again in the attack-ready position and stabbing at a riot shield until he was dispelled by a chemical irritant. These are all, as Chief Judge Howell described it "multiple incidents of directly provocative and aggressive, threatening actions toward police." These were combined with vile and violent rhetoric, including verbal threats, that stretched from before January 6 all the way up to just before Beddingfield's arrest.

Under Magistrate Judge Harvey's *Perkins* opinion, he specifically stated, "the likelihood of future violence to the community or to other law enforcement officer appears, in my view, small, particularly given his lack of any violent criminal history and the absence of any indications of his commitment to political violence going forward." *Perkins*, ECF No. 43, p. 22. This Court should find that Beddingfield's likelihood of future violence to the community or to law enforcement is considerable given Beddingfield's incessant and escalating commitment to political violence. By all pre- and post-*Munchel* rubrics that the government is aware, factor four weighs in favor of detention.

Just yesterday, in a motion for an appeal of his detention order, Judge Royce C. Lamberth stated:

> Some members of the public and even a few members of Congress retain the impression that peaceful political protestors are being held in jail pending trial. [Defendant's] detention disproves that delusion. [Defendant] is detained not because of his beliefs, but because of his alleged violent actions and his expressed intent to engage in violent activity again. When faced with evidence that a defendant poses an articulable threat, the Court has the power to disable that threat with pretrial detention. That is why [defendant] will remain detained pending trial. The nature and the character of the charged offenses, the weight of the evidence, [defendant's] history and characteristics, and the danger that [defendant] poses to the community all support pretrial detention.

*United States v. Marshall Neefe*, ECF No. 56, p. 15, 21-CR-567 (RCL) (9 Mar. 2022). The exact same paragraph could apply to Beddingfield.

## IV. LEGAL AUTHORITIES

The government adopts and incorporates the legal authorities as outlined in its prior filings and on the record during the two sessions of the detention hearing. Additionally, the government addresses and distinguishes the two cases cited by the Magistrate Judge in his decision to craft conditions of release: *United States v. Owens*, 541 F. Supp. 3d 102 (D.D.C. 2021) (Howell, C.J.) and *United States v. [4] Michael Steven Perkins*, 1:21-cr-00447 (CJN). While the latter case is now before this Court, there is no indication on the docket that the government requested a review or revocation of the Magistrate Judge's order of release as to Mr. Perkins. Both Chief Judge Howell and Magistrate Judge Harvey used the prescribed 18 U.S.C. § 3142(g) factors to frame their decisions, specifically: (1) the nature and circumstances of the offense, (2) the weight of the evidence of the defendant, (3) the history and characteristics of the defendant, and (4) the nature and seriousness of the danger posed by the defendant's release. Even comparing this case to the cases set forth by Magistrate Judge Faruqui, Beddingfield is more comparable to the *Richardson* opinion. In *Owens* and *Perkins*, the respective judges hardly give that section a second thought. Owens had no criminal history, and "most important" to Magistrate Judge Harvey was the fact that Perkins had no criminal history that indicated a propensity for violence.

### A. *United States v. Owens*

In the *Owens* case, defendant Grady Douglas Owens, a 21-year-old college student from Blanco, Texas, who—like Beddingfield—entered the Capitol's restricted grounds on the west side of the Capitol with his father. It was around that time that Owens used a skateboard to strike an officer. After that assault, Owens and his father went around to the east side of the Capitol and

continued engaging in various activities against law enforcement, to include, allegedly, Owens using his skateboard to take another swing at law enforcement. *Owens*, 541 F. Supp. 3d at 107.

Chief Judge Howell found that of the 3142(g) factors, the first two militate in favor of pretrial detention and the latter two in favor of release. Notably, the court spent little time discussing what was arguably the strongest feather in the defendant's cap, that being his history and characteristics. *Id.* at 115. Owens had no criminal history and had never been arrested. *Id.* He has "extremely strong ties to the Western District of Texas" and an "exceptionally close relationship with his family, church and community." *Id.* Owens received over thirty letters of support from family and friends. *Id.*

Chief Judge Howell then used the D.C. Circuit Court's *Munchel* opinion to frame her finding that the fourth factor— the nature and seriousness of the danger to the community posed by the defendant's release—also favors pretrial release. *Id.* at 115-18. Following a discussion of the facts of Owens case and following a comparison to many other January 6 detention rulings, Chief Judge Howell ultimately found that absent anything else, "[striking] a law enforcement officer with [a] skateboard, join[ing] a mob chorus in haranguing a police line and join[ing] the mob in trying, along [with] his father, to force his way into the Capitol building" was insufficient to support a finding of dangerousness to the community. Although the final tally was 2-2, not all factors are created equal, and Chief Judge Howell crafted conditions of release for Owens.

B. *United States v. Perkins*

Michael Steven Perkins is defendant four in a five-defendant case, *United States v. Pollock, et al*, 21-CR-447 (CJN). While the government asked for and the court held detention proceedings, no written opinion was ever issued as Magistrate Judge Harvey put all his findings on the record, the thirty-one-page transcript of which may be found at ECF No. 43. Using Chief Judge Howell's *Owens* opinion (amongst others) to frame much of his findings, Magistrate Judge Harvey found

that the first two 3142(g) factors weigh in favor of pretrial detention as to Perkins and the latter two militate towards Perkins' release.

As to the third factor, the history and characteristics of the defendant, Perkins is "37 years old, [and] he's lived his whole life in the town in Florida where he was born." *Perkins*, ECF No. 43, p. 15. He has held long and steady work, has been "been married for 13 years and lives with his wife and two children." *Id.* "[M]ost important to the court," however, was the fact that Perkins has "very little criminal history [ . . . ] and certainly none that indicates a propensity for violence." *Id.* at 16. It bears reiteration that Magistrate Judge Harvey emphasized the lack of criminal history and especially the lack of any indication of a propensity for violence as **most important to the court**.

In weighing the fourth factor, Magistrate Judge Harvey again used the *Owens* opinion to frame his evaluation. The specific criteria he articulated was, "the D.C. Circuit has indicated that merely showing the danger a person posed to others of the community or even our democratic institutions on January 6 is not enough to justify pretrial detention." *Id.* at 19. He continues,

> Chief Judge Howell directed, in *Owens*, intentional and purposeful assaultive conduct, particularly involving multiple instances of directly provocative and aggressive, threatening and aggressive behavior and threatening actions toward law enforcement on the 6th, when combined with verbal threats before, during or continuing after that date, are all indicia of the dangerousness that may warrant pretrial detention.

*Id.* at 21. Once again, two favors weighed in favor of detention and two in favor of release, and Magistrate Judge Harvey crafted conditions of release for Perkins.

### C. *United States v. Richardson*

The government referenced the *Richardson* opinion several times during the detention hearing for Beddingfield, but includes it herein because in the government's view, it is more applicable to the facts of this case than *Owens* or *Perkins*. *United States v. Richardson*, No. 21-721 (CKK), 2022 U.S. Dist. LEXIS 15160 (D.D.C. Jan. 27, 2022). In *Richardson*, the Magistrate

Judge out of the Eastern District of Pennsylvania ordered the defendant, a 71-year-old resident of Pennsylvania, detained after finding that the government had proven by clear and convincing evidence that no condition or combination of conditions could reasonably ensure the safety of the community, an order that defense counsel asked District Court Judge Kollar-Kotelly to revoke. *Id.* at *11. In her determination of the motion, the Judge Kollar-Kotelly "decline[d] to hear additional evidence." *Id.* at *2.

Richardson had traveled to D.C. from Pennsylvania and is first seen at approximately 1:40 PM confronting law enforcement on the west side of the Capitol. *Id.* at *4. At one point, Richardson "raise[d] [a] flagpole and forcefully [swung] it downward, striking a police officer standing behind the metal barricade." *Id.* at *5. He swung it two more times, with the third swing resulting in the flagpole breaking. *Id.* at *5-*6. He then appears to have dispersed when a chemical irritant was deployed. *Id.* at *6. Between July 2018 and September 2021, Richardson had three encounters with local law enforcement, to include displaying a firearm at a gas station altercation, carrying a firearm and driving without a license, and allegedly knocking a motorcyclist off his motorcycle and brandishing a weapon at the victim's brother when he approached Richardson. *Id.* at *13-*16.

One thing that distinguishes the *Richardson* opinion from the prior two is Judge Kollar-Kotelly's thorough and recent (as compared to this case) consideration of the fourth factor. Notably, she writes,

> Consistent with other courts in this jurisdiction, the Court is unpersuaded by any argument that he does not present prospective danger to the community because the precise circumstances of January 6, 2021 may not recur. *See, e.g., Sabol*, 534 F. Supp. 3d 58, 2021 WL 1405945, at *18 ("While the circumstances of January 6, 2021 were unique, and the day has passed, it cannot be said that every Capitol Riot defendant is no longer a danger because those exact circumstances are unlikely to arise again."). As the court articulated in *Whitton*, "even if the exact circumstances of the January 6 attacks are not 'continuing in nature' or 'likely to be repeated in the future,' the violent offenses [the defendant] committed that day are serious enough on their own to militate against pretrial release

>under this first Section 3142(g) factor." 534 F. Supp. 3d 32, 2021 WL 1546931, at *9. The
>same is true as to Defendant Richardson. *See Munchel*, 991 F.2d at 1284 (observing that
>Capitol Riot defendants who acted violently are in a different category of dangerousness
>than those who did not do so).

*Id.* at *35. In weighing the 18 U.S.C. § 3142(g) factors, Judge Kollar-Kotelly, in an analysis that more directly mirrors the appropriate analysis in this case, finds that all four of the factors weigh in favor of pretrial detention. The government asks this Court to make the same finding as to Beddingfield and issue the government's requested order of pretrial detention.

## V.  THE MAGISTRATE JUDGE'S PROPOSED CONDITIONS ARE NOT SUFFICIENT

Following the detention hearing, the Magistrate Judge filed his proposed conditions of release. ECF No. 15. For all the reasons above, the government generally believes that the conditions are insufficient and respectfully disagrees with the Magistrate Judge's decision to craft these conditions. With most January 6 defendants, due to their paucity of contacts with the criminal justice system, the Court is left to wonder how the defendant might perform under conditions of release. Here, there is no question, for Beddingfield was on conditions of release for attempted murder when he went to the Capitol with his father to, as his father proclaimed on social media, take their country back from "those commie bastards." Even if the government has no evidence of preparation for violence beyond Beddingfield's declaration that all antifa deserve a slow death, Beddingfield certainly did not hesitate to engage in violence against law enforcement when the opportunity presented itself.

Further, even though his conditions of release prohibited any access to social media, one of the first things Beddingfield did after being released was to set up not one, but **two** new social media accounts. Further, even though he had gone through the experience of shooting someone in the head and earning a felony conviction at such a young age, at the time the government served legal process on Apple, his game center ID was still listed as Bullet Slinging Slasher.

It is not a wise course of action to release a young man with a violent criminal history and an affinity for firearms, violence, trolling and inciting others, and violating the trust of the courts into the sole care and custody of a seventy-four-year-old man who lives alone without the internet or a cellphone in rural North Carolina.

For many other January 6 defendants charged with violent crimes, that day appears to have been the apex of their propensity for violence and out of character with their established personal history. Beddingfield, as shown by his violent prior felony conviction, by his violation of his pretrial conditions of release with a federal violent felony offense in the instant case, and by the continued deployment of violent rhetoric, alleged reckless driving, and illegal firearms possession while under probation as well as all the other facts and proffers made by the government and found by the court, is a danger to the community and no combination of conditions of release can reasonably assure the safety of others from him.

## VI.   MOTION TO CONTINUE OF THE STAY OF DEFENDANT'S RELEASE PENDING THIS COURT'S DETERMINATION OF THIS MOTION

For the good cause shown in all the filings, facts, and arguments before the Court, the government asks this Court to extend the Magistrate Judge's stay of the Magistrate Judge's order of release until it can consider and rule on the government's motion to revoke the same.

**[THIS SPACE INTENTIONALLY LEFT BLANK]**

## VII.   CONCLUSION

For all these reasons, the government believes that there is clear and convincing evidence that no condition or combination of conditions may be crafted by this Court that would reasonably ensure the safety of the community as Beddingfield awaits trial.

                                        Respectfully submitted,
                                        Matthew M. Graves
                                        United States Attorney
                                        DC Bar No. 481052

By: _____
       SEAN P. MURPHY
       Assistant United States Attorney
       D.C. Bar No. 1187821
       Torre Chardon, Ste 1201
       350 Carlos Chardon Ave
       San Juan, PR 00918
       787-766-5656
       sean.murphy@usdoj.gov

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **v.** | : | **Case No.: 22-CR-66 (CJN)** |
| | : | |
| **MATTHEW JASON BEDDINGFIELD,** | : | |
| | : | |
| **Defendant.** | : | |

## ORDER

Upon consideration of the Government's Motion for Emergency Stay and for Revocation of a Release Order as to defendant Matthew Jason Beddingfield,

It is this _____ day of March 2022,

**ORDERED**, that the Motion for Emergency Stay of a Release Order is hereby **GRANTED**.

---

CARL J. NICHOLS
U.S. DISTRICT COURT JUDGE
DISTRICT OF COLUMBIA