IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No: 22-cr-00066-CJN |
| v. | |
| MATTHEW JASON BEDDINGFIELD | |

## **Defendant's Response to the Government's Motion for Revocation of the Magistrate Judge's Release Order**

Defendant, Matthew Beddingfield, opposes the government's motion to revoke Magistrate Judge Faruqui's Order denying the government's motion for detention and instead imposing stringent conditions of pre-trial release on him. Matthew is not a flight risk—and the government does not allege to this Court that he is—so this case collapses into the question of whether Judge Faruqui correctly determined that the government failed to prove by clear and convincing evidence that no condition or combination of conditions could ensure the safety of the community when the Court denied the government's motion for detention.

The government—both before Judge Faruqui and in its filing before this Court—has failed to meet that demanding standard and overcome Matthew's presumption of liberty. As shown below, Judge Faruqui got it right. Despite the government's rhetoric to the contrary (1) Matthew was not a leader or organizer of the violent January 6 activities, nor did he come to the District with weapons or any plans for violence. He travelled with his father to engage in non-violent protest just as he had done in the past; and (2) Matthew's social media posts were all protected speech that did not demonstrate true threats and do not provide evidence—let alone clear and convincing evidence—that Matthew is a danger to others if released. The government cherry picks isolated statements out of Matthew's online life to try and portray him as a menace and a danger.

1

Under the Bail Reform Act, Matthew's social media posts and political speech should not occupy more weight than they deserve. To the extent this Court is troubled by those social media posts, Judge Faruqui properly noted that including a full social media ban as part of his release conditions strikes the right balance between protecting the community and protecting Matthew's right to liberty. Matthew requests that this court review the prior motions submitted and incorporate those arguments prior to making a decision. See Docket 11 and 14. This Court should affirm Judge Faruqui's Order, deny the government's motion for detention, and order Matthew released on the conditions outlined in Judge Faruqui's Order.

**A. This Court can only overcome Matthew's presumption of liberty if the government proves by clear and convincing evidence that the stringent release conditions imposed by Judge Faruqui cannot reasonably assure the safety of any individual or the community.**

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987); *see also United States v. Munchel,* 991 F.3d 1273, 1279 (D.C. Cir. 2021) (same). The Bail Reform Act of 1984 governs this "carefully limited exception" in federal criminal cases. *See* 18 U.S.C. § 3141, *et seq*. In enacting this law, "Congress envisioned the pretrial detention of only a fraction of accused individuals awaiting trial." *United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985). Acknowledging the "norm" of liberty, the Act does not even allow a district court to hold a hearing to determine if someone should be detained outside of two statutorily defined circumstances: (1) if the government is charging the defendant with having committed one of an enumerated list of crimes; or (2) if the case involves "a serious risk that [the defendant] will flee" or "a serious risk that" the defendant will try to obstruct justice or attempt to intimidate a potential witness or juror. 18 U.S.C. § 3142 (f)(1)-(2).

Here, the government does not charge Matthew with one of the Act's enumerated crimes, nor does the government argue that Matthew is a flight risk. So the only issue before this Court is whether he "*presents an identified and articulable threat* to an individual or the community[.]" *Munchel*, 991 F.3d at 1280 (quoting *Salerno*, 481 U.S. at 751) (emphasis in original).

Recognizing the importance of individual liberty, Congress ensured through the Act that the government could not convert the "carefully limited exception" of detention into a de facto norm. The government cannot merely allege dangerousness to detain an individual; instead, "the government must prove by 'clear and convincing evidence' that 'no condition or combination of conditions will reasonably assure the safety of any other person and the community'" in order to overcome a defendant's presumption of liberty. *Munchel*, 991 F.3d at 1279-80 (quoting 18 U.S.C. § 3142(f)). Thus the government must meet a "high threshold" to show "the requisite finding of future dangerousness for defendants charged for offense conduct arising out of the January 6 events at the Capitol." *United States v. Owens*, 531 F. Supp. 3d 102, 116 (D.D.C. 2021) (discussing *Munchel*).

In assessing whether the government has met this "high threshold," this Court considers four factors: "(1) 'the nature and circumstances of the offense charged,' (2) 'the weight of the evidence against the person,' (3) 'the history and characteristics of the person,' and (4) 'the nature and seriousness of the danger to any person or the community that would be posed by the person's release.'" *Munchel*, 991 F.3d at 1279 (quoting 18 U.S.C. § 3142(g)(1)-(4)).

And, in reviewing these factors, this Court does not weigh a binary choice between detention and full release. Instead, Congress contemplates a large middle ground in which a district court releases a person "subject to the least restrictive . . . condition or combination of conditions [] that . . . will reasonably assure . . . the safety of any other person and the community."

18 U.S.C. § 3142(c)(1)(B). This Court may grant the government's detention motion only if it "finds that no condition or combination of conditions will reasonably assure . . . the safety of any other person and the community." *Id.* § 3142(e)(1). Reviewing the four statutory factors in light of Judge Faruqui's carefully considered conditions of release shows that this Court must also deny the government's motion and affirm Judge Faruqui's Order.

**B. The nature and circumstances of Matthew's offense and the weight of the evidence against him, in the context of individuals charged for crimes related to January 6th, weighs toward affirming the current Release Order.**

The government "relies on the representations of proffers previously made and the record as established" to assert that the nature of Matthew's offense and the weight of evidence against him "weigh in favor" of detention. Gov't Mtn. at 4. "Not so fast." *Owens,* 541 F. Supp. 3d at 116. This "court[] retains a 'grave constitutional obligation to ensure that the facts and circumstances of each case warrant' the 'exceptional treatment' of detention." *Id.* (quoting *Munchel*, 991 F.3d at 1285). Matthew is "entitled to an *individualized determination* of dangerousness based on the discrete facts before [this] court," and not merely a conclusory determination that his crime is categorically too dangerous to allow him to remain at liberty. *Id.* (emphasis added).

This District has developed a specific framework for reviewing a dangerousness determination in the context of defendants charged regarding January 6th. Courts consider whether a defendant

> (1) "has been charged with felony or misdemeanor offenses;" (2) "engaged in prior planning before arriving at the Capitol;" (3) "carried or used a dangerous weapon during the riot;" (4) "coordinat[ed] with other participants before, during, or after the riot;" (5) "assumed either a formal or a de facto leadership role in the assault by encouraging other rioters' misconduct;" or (6) expressed "words" and made "movements during the riot" that included "breach[ing] the interior of the Capitol building," "injur[ing], attempt[ing] to injure, or threaten[ing] to injury others, or . . . . damag[ing] or attempting to damage federal property," "actively threaten[ing] or confront[ing] federal officials or law enforcement" or "otherwise promot[ing] or celebrat[ing] efforts to disrupt the certification of the electoral vote count."

*Owens*, 541 F. Supp. 3d at 111 (quoting *United States v. Chrestman*, Case No. 21-mj-218 (ZMF), 2021 U.S. Dist. LEXIS 36117 at \*20-24 (D.D.C. Feb. 26, 2021)).

Conducting the requisite "individualized determination" in Matthew's case in light of these factors shows that Judge Faruqui got it right:

- Matthew did not injure anyone.

- Matthew did not vandalize or damage federal property or take "souvenirs" from the Capitol.

- Matthew was not a member of the group that planned the riot; he simply went to the rally with his father. *Accord Owens*, 541 F. Supp. 3d at 112 ("defendant does not appear to be a member of any organized group that planned for a riot and attack on the Capitol on January 6, 2021. To the contrary, the extent of defendant's coordination with other participants of the riot, either before or after January 6, is limited to his travel with his father and grandparents,… and then accompanying his father onto restricted areas on the Capitol grounds.")

- Unlike others who came ready for combat, Matthew had no plans or intention to engage in a riot. He dressed in casual clothes and carried a flag like he did for the peaceful protest he attended in November, 2020. *Accord Owens,* 541 F. Supp. 3d at 112 ("defendant does not appear to have come to the Capitol prepared for conflict, but instead 'dressed casually,' wearing 'no body armor or tactical gear,' … and he brought no conventional dangerous weapon for offensive or defensive uses, such as a taser, firearm, baton, axe or chemical spray.")

- Matthew had no leadership role in the riot—either formally or informally.

- Indeed, Matthew is not even a member of any of the subgroups associated with plans for violence on January 6th like the Proud Boys, the Oath Keepers, or any other militia.

- The alleged assaultive conduct on which the government relies lasted for less than ten seconds.

While comparisons with other January 6th defendants is not determinative, it is enlightening. The government alleges that Matthew engaged in conduct less serious than that at issue in *Owens* or *Perkins* and in other cases involving defendants who have been released.

Matthew engaged in less serious conduct than the defendants in *Owens* and *Perkins*. Matthew did not hit anyone with the flagpole and did not injure anyone. The entire allegedly assaultive episode lasted less than 10 seconds.  In *Owens*, the defendant "'smash[ed]' Officer C.B. in the head with his skateboard[,]" "scuffled with Officer C.B.[,]" "yelled disparaging remarks and made obscene gestures at the officers[,]" and ninety minutes later, raised his skateboard above his head and brought it down, although it's unclear whether he hit anyone that time. *Owens*, 541 F. Supp. 3d at 106-07, 113. The officer had a blunt force injury to the head, may have suffered a concussion, and had a finger crushed. *Id.* at 114-15. In *Perkins* (Tp 9), the defendant threw a flagpole at the line of officers and then "picked up what appears to be a different flagpole from the ground, he pushed it into the chest of an officer and then moments after that raised the flagpole over his head and brought it down in the direction of another officer, appearing to strike the officer in the back or back of the head."

Matthew's alleged assaultive conduct was also less serious than other January 6 defendants who have been released. *See United States v. Klein*, 533 F. Supp. 3d 1, *18 (D.D.C. 2021) ("But where so much of the proffered justification for Klein's detention relies on the type of force he employed, the Court sees some relevance in the fact that several defendants who also face charges under §111(b) for assaulting officers and did not engage in planning activities were released without objection from the government."); *United States v. Leffingwell*, 21-CR-5 (D.D.C.) (defendant repeatedly punched officer with closed fist in attempt to push past wall of officers); *United States v. Gossjankowski*, 21-CR-123 (D.D.C.) (defendant activated taser within tunnel multiple times as he pushed towards the police line); *United States v. Blair*, No. 21-CR-186 (D.D.C.) (defendant struck an officer in the chest with a lacrosse stick).

Based on all of these factors, both *Owens* and *Perkins* found the first factor weighed only "modestly" in favor of detention. *Owens*, 541 F. Supp. 3d at 106 ("first factor weighs modestly in favor of detention."); *Perkins* (Tp 14) (first factor weighs in favor of detention "only modestly because of these mitigating factors."). Because Matthew engaged in less serious conduct, the first factor here favors release on conditions.

### C. The weight of the evidence does not favor detention.

The weight of the evidence against Matthew is the "least important" of the four factors. *United States v. Hir*, 517 F.3d 1081, 1090 (9th Cir. 2008). Presuming that an individual should be detained "because the evidence against him appears to be weighty . . . would appear to be tantamount to a presumption of guilty, a presumption that our system simply does not allow." *United States v. Gray*, 651 F. Supp. 432, 436 (W.D. Ark. 1987). And, in any event, the evidence against Matthew is not as strong as that against other January 6th defendants because the government does not allege that he caused any injuries. His alleged conduct was less serious than that alleged against many other individuals. Thus, there is simply less evidence that the government has against him. At best, this "least important" factor is neutral for the government.

### D. Matthew's history and characteristics weight toward release.

Matthew is *young.* He graduated high school in 2018.  He lives at home in a small community and his behavior can be easily and positively impacted in the community while accurately enforcing the BRA.  He is not one of the organizers or leaders of the violence on January 6th. Even if the government's allegations are true, he was a very young man caught in political activity, that to the surprise of many, resulted in historical mayhem at the Capitol.  In order to make him seem like a danger to others, the government asks this Court to focus on two things—Matthew's *Alford* plea to North Carolina assault and his social media posts. Neither of those facts,

stripped of sensationalism and taken in the proper context, show that Judge Faruqui erred when he found that the government did not meet its clear and convincing burden of proof.

1. **Matthew's *Alford*[1] plea to North Carolina assault does not show that he is a danger to others or the community.**

The government's motion to this Court presents its version of the facts of Matthew's sole prior conviction to paint him as a dangerous individual with a propensity for violence. Gov't Mtn. at 4. Matthew disputes the government's description of the offense; put simply, it did not happen the way that the government claims that it did.

Matthew is not accusing the government of acting in bad faith; it is simply mistaken. And the government's mistake is understandable. The government is presumably relying on police reports and similar documents to make its assertions. But that reliance is incorrect as a matter of law and mistaken as a matter of fact. Matthew pleaded guilty to North Carolina Assault with a Deadly Weapon Inflicting Serious Injury ("AWDWISI") pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970). That plea means that Matthew did not admit *anything* about the offense. He simply accepted an adjudication of guilt. "In entering an *Alford* plea, the defendant waives a trial and accepts punishment, but he does not admit guilt, and the prosecutor's proffer of what the State would have proved at trial does not amount to an admission or acceptance of the facts by the defendant." *United States v. Alston*, 611 F.3d 219, 226 (4th Cir. 2010).

A defendant making an *Alford* plea "admit[s] nothing about the narrower description of the crime offered by the [government] at the plea colloquy." *United States v. Ventura*, 565 F.3d 870, 879 (D.C. Cir. 2009). And, "[a]t no point did [Matthew], his counsel, or the judge confirm the truth of the facts as stated by the [State of North Carolina] in its proffer. The judge was not required to

---

[1] *North Carolina v. Alford*, 400 U.S. 25 (1970).

accept those facts to convict [Matthew.]" *Id.*  That is the whole point—and the legal effect—of an *Alford* plea.

Thus, the government cannot, as a matter of law, use any of the factual allegations made in Matthew's prior case to establish any facts necessary to meet its clear and convincing burden of proof in this later judicial proceeding. *See id.* (Discussing modified categorical approach)*; see also Alston,* 611 F.3d at 227 (same); *United States v. Savage*, 542 F.3d 959, 966-67 (2nd. Cir. 2008) (same).

And, in any event, this detention hearing is not the place to re-litigate the seriousness of Matthew's assault conviction. The state of North Carolina was the proper forum to do that. And the state of North Carolina convicted Matthew of AWDWISI—a Class E Felony in North Carolina—and gave him a suspended sentence with 24 months of probation.[2] That was the crime and sentence that the state prosecutor and state court believed reflected his actual conduct and culpability. The government is simply wrong—as a matter of fact and a matter of law—to rely on unadmitted allegations to recast that conviction into something more dangerous and violent than it actually was.

## 2.  Matthew's protected online speech does not make him a danger to others or to the community.

The government also points to Matthew's social media posts to argue for his preventative detention. Lawyers like to invoke the First Amendment—perhaps sometimes when it is not entirely

---

[2] Notably, the conditions of this probation did *not* prohibit Matthew's parents (in whose home he was residing) from owning firearms. So while the government notes that "law enforcement recovered a total of eight firearms and over 2,000 rounds of ammunition in the Beddingfield home," it neglects to notes that (1) Matthew had no ownership or possession of these firearms and ammunition, and none were found in his bedroom; (2) his parents voluntarily gave up the ammunition to law enforcement when requested; and (3) no law or conditions of probation forbid his parents from owning guns.

Also, the FBI inventory receipt of what was seized from Matthew's parents lists 45 rounds of ammunition. On March 4, the government admitted this 2,000 number was an error, however, the error continues by arguing any ammunition was found in Matthew's bedroom.

on point. This is not one of those times. Matthew has not been convicted of any crime. Instead, the government asks this Court to detain him because it believes that the words he said and the ideas he holds make him a dangerous and bad person. The government's request strikes at the core of free speech.

The internet has the highest level of First Amendment protections—akin to print media. *Reno v. ACLU*, 521 U.S. 844, 870 (1997). Matthew's online words become actionable only if they constitute incitement to imminent violence or a true threat. *Brandenburg v. Ohio,* 395 U.S. 444 (1969) (Incitement doctrine); *Virginia v. Black*, 538 U.S. 343 (2003) (True Threat doctrine). People are allowed to have horrible beliefs. And, consistent with the First Amendment, people are allowed to express those beliefs. The government only has the right to intervene when those expressions become "a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Id.* The words must be "serious" and the threat must be particularized to an "individual or group of individuals." Mere hate speech, however abhorrent, is not a true threat.

The government cannot point to any of Matthew's online activity that involved true threats involving January 6th. This is not surprising. As noted above, Matthew was not a leader or organizer of the illegal activity. And he did not travel to D.C. with the knowledge or intent to engage in any illegal activity. So he would not have been posting about an intent to do something that he had no intention of doing.

Instead, the government selects a few of Matthew's online statements that are racist, misogynist, crude, and ill advised. But none of them are "serious expressions" of threats against individuals or groups. The government simply wants to show that Matthew is a bad person. The

Bail Reform Act (and, more importantly, the First Amendment) requires the government to show a lot more than that.[3]

**E.   The stringent conditions imposed by Judge Faruqui as well as Matthew's third party custodian are sufficient to ameliorate the nature and seriousness of the danger to any person or the community that would be posed by Matthew's release.**

Judge Faruqui ordered Matthew released to the custody of his grandfather on stringent conditions. Matthew's grandfather is retired. He lives alone and can supervise Matthew. He is a former Marine and Vietnam veteran. He worked in civilian life as a plumber. He is proudly 27 years sober. His long experience and positive relationship with treatment and recovery can help Matthew with the issues that he is facing. His grandfather is fully aware of Matthew's charges and criminal history and eagerly wants to help him at this stage of his life. When Matthew's grandfather was questioned effectively by Magistrate Judge Faruqui, his grandfather expressed a commitment to supervising Matthew and helping him "grow-up". He was unequivocal that he will be the "eyes and ears" of the court. When it came to the conditions of the court order, he showed a clear understanding about his duty to the court over any leniency toward his grandson.

In addition to the guidance and support that Matthew's grandfather will provide, this court should also order the provisions in Judge Faruqui's Order that places serious restrictions on Matthew which will suffice to protect the community. In addition to the standard conditions of release, these special conditions include

>    1.   Defendant shall be placed on home detention at his grandfather's house. Defendant is not allowed to leave the residence except to attend Court proceedings and meetings with his lawyer. As to any travel to medical appointments or religious services, defendant must first seek permission from his supervising Pre-trial Service officer.

---

[3] And, as noted below, if this Court is disturbed by Matthew's online activity, one of the conditions of release that Judge Faruqui's Order imposes is a full and comprehensive ban of all online activity.

2. Defendant is not to have access to the internet, social media, a smart phone, or any electronic device that can access the internet. Defendant is permitted to have a phone that is not capable of accessing the internet.

3. Defendant is not permitted to travel to Washington, D.C. except for court proceedings.

4. Defendant is not permitted to travel outside of his home judicial district without permission from the Court.

5. For three weeks, Defendant is not to return to his employment. During that time, counsel for Defendant will advise the Court and the government how Defendant's access to the internet and social media at his work site can be limited.

II. To ensure Defendant's compliance with the conditions of his release, the third-party custodians shall:

1. Not permit any visitors in the residence, outside of Defendant's mother or sister, unless the third-party custodian is present.

2. Ensure Defendant does not have access to any computers or "smart" devices capable of accessing the internet.

3. Not have wi-fi or internet access at the residence, unless on a limited basis to allow for remote court proceedings.

4. Remove the door from the bedroom that Defendant will be staying in to ensure the third-party custodian can monitor the Defendant.

5. Immediately report any violation of conditions of release to law enforcement and Pretrial Services.

These conditions are more than enough to protect the community. Matthew will be living in a home without wi-fi, in a room without a door, supervised by an ex-Marine who signed a release order obligating him to immediately report Matthew if he violates any conditions of release. Judge Faruqui took his obligation seriously, and he fashioned an order that effectuated Congress' intent in passing the Bail Reform Act and the United State Supreme Court's unwavering commitment to the presumption of pre-trial release.  This Court should affirm the current release order.

12

**CONCLUSION**

"[I]mprisonment for even one day has a substantial impact on a man's liberty." *United States ex rel. Miller v. Twomey*, 479 F.2d 701, 715 n.29 (7th Cir. 1973). Matthew has been detained for 34 days while the government has exercised its rights under the Bail Reform Act.  Pre-trial detention has far greater case specific and lifelong negative impacts that are not outweighed by the effective condition at this court's disposal to order and effectively enforce.  Matthew incorporates the impact arguments made in his prior briefing into this courts de novo review.  *See* Docket Numbers 11 and 14.

Matthew appreciates how seriously this Court takes his liberty and how quickly it has handled these proceedings. As argued above and recognized by Judge Faruqui, the government cannot meet the high burden necessary to commit Matthew to pre-trial detention. He respectfully asks this Court to affirm Judge Faruqui's order and immediately release him into his Grandfather's custody.

Respectfully submitted this 14th day of March, 2022.

G. ALAN DUBOIS
Federal Public Defender - EDNC

By:     ***/s/ Kyana Givens***
KYANA GIVENS
Assistant Federal Public Defender
Attorney for Defendant
Office of the Federal Public Defender
150 Fayetteville Street, Suite 450
Raleigh, North Carolina  27601
Telephone:  919-856-4236
Fax:  919-856-4477
E-mail:  Kyana_Givens@fd.org
Washington Bar No. 37670
LR 57.1 Counsel, Appointed

***/s/ Leza Lee Driscoll***
LEZA LEE DRISCOLL

Assistant Federal Public Defender
Attorney for Defendant
Office of the Federal Public Defender
150 Fayetteville Street, Suite 450
Raleigh, North Carolina 27601
Telephone: 919-856-4236
Fax: 919-856-4477
E-mail: Leza_Driscoll@fd.org
N.C. State Bar No. 20926
LR 57.1 Counsel Appointed

## *CERTIFICATE OF SERVICE*

I HEREBY CERTIFY that a copy of the foregoing was served upon:

SEAN P. MURPHY
Assistant United States Attorney
Detailee, Capitol Siege Section
District of Puerto Rico
Torre Chardón, Suite 1201
350 Carlos Chardón Avenue
San Juan, PR 00918

by electronically filing the foregoing with the Clerk of Court on March 14, 2022, using the CM/ECF system which will send notification of such filing to the above.

This the 14th day of March, 2022.

*/s/ Kyana Givens*
KYANA GIVENS
Assistant Federal Public Defender
Attorney for Defendant
Office of the Federal Public Defender
150 Fayetteville Street, Suite 450
Raleigh, North Carolina 27601
Telephone: 919-856-4236
Fax: 919-856-4477
E-mail: Kyana_Givens@fd.org
Washington State Bar No. 37670
LR 57.1 Counsel, Appointed

*/s/ Leza Lee Driscoll*
LEZA LEE DRISCOLL
Assistant Federal Public Defender
Attorney for Defendant