UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | Case No.: 22-CR-66 (CJN) |
| | : | |
| MATTHEW JASON BEDDINGFIELD, | : | |
| | : | |
| Defendant. | : | |

**UNITED STATES' MOTION IN CONCURRENCE WITH THE
RECOMMENDATION OF PRETRIAL SERVICES**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully concurs with the Pretrial Services Agency and moves this Court to remove the defendant from all supervision programs. ECF No. 24, p. 3.

The government advocated in favor of pretrial detention of Beddingfield during all detention proceedings. The government indicated through motions and hours of hearings that it has shown by clear and convincing evidence there is no condition or combination of conditions that could reasonably ensure the safety of the community. At the end of the hearings before the Magistrate Judge, the ultimate decision was that conditions of release would be fashioned. In doing so, however, the Magistrate Judge spoke briefly about what would happen if Beddingfield violated the conditions of his release. Specifically, the Magistrate Judge indicated that if he released Beddingfield, and if Beddingfield violated the terms of his release, the public could question the wisdom of granting conditions of release to someone who while on conditions of release for a violent offense chose to cross state lines and participate in an event that disrupted the peaceful transition of power of the United States of America.[1]

---

[1] https://twitter.com/ryanjreilly/status/1502042165958123522

At the same hearing, the Magistrate Judge designated Beddingfield's grandfather as Beddingfield's third party custodian. The Magistrate Judge took a considerable amount of time to interview Beddingfield's grandfather, ensuring that the grandfather understood that as the third-party custodian, he could be held personally responsible for any slip ups or violations by Beddingfield. After interviewing Beddingfield's grandfather, the Magistrate Judge qualified him as a third-party custodian. The Magistrate Judge did not qualify Beddingfield's mother as a third-party custodian, but he did indicate that she was on the short-list of folks who could visit with Beddingfield. Beddingfield's father did not make the cut. Staying away from and having no contact with his father was one of the conditions of release imposed by both the Magistrate Judge and this Court.

While the government credited the Magistrate Judge with an extremely thoughtful consideration of the facts and circumstances, the government maintained that Beddingfield could not be trusted to abide by the conditions of release constructed by the Magistrate Judge and asked this Court to reject the conditions of release, keeping Beddingfield detained pending trial. After another hearing of considerable length, and after much thoughtful consideration on the part of this Court, Beddingfield's conditions of release as crafted by the Magistrate Judge were upheld by this Court. In doing so, however, this Court issued a stern warning that "any violation would most likely result in revocation of [Beddingfield's] conditions of release." ECF No 24, p. 3.

At least at one point in the hearing, this Court used the words "strict liability" to refer to Beddingfield's conditions of release. Black's Law Dictionary defines strict liability as, "An offense for which the action alone is enough to warrant a conviction, with no need to prove a mental state; specif., a crime that does not require a mens rea element, such as traffic offenses and illegal sales of intoxicating liquor." CRIME, Black's Law Dictionary (11th ed. 2019). Pretrial, in

their notice of violation and recommendation of removal, also recognized that on March 16, 2022, "the Court sternly warned the defendant that any violation would most likely result in revocation of his conditions of release." ECF No. 24, p. 3.

At the Status Hearing on May 4, 2022, having been compliant with the conditions of release thus far, Beddingfield asked that his conditions be loosened. Specifically, he asked to be able to return to work. The government did not object to this request, but did reject to any further removal of conditions, arguing that any further modification should be incremental. The Court agreed and modified the defendant's conditions *only* to allow him to work.

Despite all this, just three days later and on May 7, 2022, Beddingfield asked for and received permission to "get a haircut" and "do any essential shopping." *Id*. After completing those tasks, however, instead of returning home, Beddingfield, who was accompanied by his mother and not his third-party custodian, went out to eat at a Buffalo Wild Wings restaurant and spent forty-five minutes there. *Id*. After leaving, and more troubling, is the fact that he and those he was with "drove by and stopped at the end of the street [where] his father resides before proceeding to an unknown residence [ . . . ] before going home." *Id*.

Whether or not he should have even been allowed to go get a haircut and do "essential shopping" is a question that merits discussion at the next hearing. Even if the Court finds that this extra-judicial loosening of conditions was permissible, however, the Probation Officer in North Carolina certainly did not authorize him to spend 45 minutes at a restaurant, 15 minutes at an unknown residence, and a drive-by of his father's house. It matters little if at all whether Beddingfield was the one driving the vehicle or whether it was someone else. It is the responsibility of Beddingfield to notify anyone who he is with of the conditions that he is under and the potential consequences of *any* violation. The Magistrate Judge spent a significant period questioning and

warning his third-party custodian about the idea that he, the grandfather, could be held responsible for violations of Beddingfield. It is the government's understanding Beddingfield was with his mother and not his third-party custodian at the time in question.

The government emphasizes the tonal similarities in this to what happened in the previous case where Beddingfield was arrested and held on $1,000,000 bond for attempted murder before that amount was lowered to an amount that his family could post. As the government informed the Magistrate and District Courts during the detention proceedings, as soon as he was granted conditions of release in that case, he reinitiated his "cart" business on social media, a violation of the terms of his release. That began a progression of violations that culminated in Beddingfield's participation in the Capitol siege and assault of police officers on January 6, 2021.

During the detention proceedings, and in response to the government's concerns, Beddingfield's attorney assured the Magistrate Judge that things would be different this time. She specifically noted what she referred to as the real-time ability of probation to monitor Beddingfield's location and respond immediately if Beddingfield is somewhere he ought not to be. Beddingfield oughtn't have been at Buffalo Wild Wings and certainly not at an unidentified residence or driving by his father's house.

**[THIS SPACE INTENTIONALLY LEFT BLANK]**

At the time of his arrest, the government agreed with D.C. Pretrial Services Agency that no condition or combination of conditions could reasonably ensure the safety of the community. In deciding otherwise, the Court advised Beddingfield through thorough proceedings and in clear language that he would be held strictly liable for *any* violation. Three days after this Court gave Beddingfield an inch, Beddingfield took a mile. The government now agrees with Pretrial that the defendant should be removed from all supervision programs.

                                        Respectfully submitted,
                                        Matthew M. Graves
                                        United States Attorney
                                        DC Bar No. 481052

By: _____
                                        SEAN P. MURPHY
                                        Assistant United States Attorney
                                        D.C. Bar No. 1187821
                                        Torre Chardon, Ste 1201
                                        350 Carlos Chardon Ave
                                        San Juan, PR 00918
                                        787-766-5656
                                        sean.murphy@usdoj.gov